UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
WESTLAKE LEGAL GROUP, PLLC :
:
    Plaintiff, : NO. 1:18-cv-952 AJT/IDD
:
v. :
: **COMPLAINT**
MINNESOTA LAWYERS MUTUAL :
INSURANCE COMPANY, :
: **JURY TRIAL DEMANDED**
    Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    Plaintiff Westlake Legal Group, PLLC ("Westlake Legal") for its Complaint against Defendant Minnesota Lawyers Mutual Insurance Company ("MLM") alleges as follows.

## NATURE OF THE ACTION

    1.    This is a civil action regarding MLM's refusal to acknowledge its clear obligations to cover legal malpractice claims against Westlake Legal under legal malpractice insurance policies MLM issued to Westlake Legal. A former associate attorney of Westlake Legal allegedly committed malpractice on many different occasions. That attorney concealed his actions from Westlake Legal. MLM has denied coverage to Westlake Legal because Westlake Legal did not report the rogue attorney's actions at the time those actions were occurring. Yet, Westlake Legal had no knowledge of the actions at that time because they were concealed by the rogue attorney, and Westlake Legal promptly reported the actions after learning of the previously concealed actions. The MLM policy language contains a provision promising that Westlake Legal will not lose coverage in such a situation. MLM broke that promise and denied coverage. MLM refused to explain how its coverage denial was consistent with its promise and even

misrepresented that the provision was part of an exclusion when it was not. MLM's coverage denial has no basis, much less a reasonable basis, and was taken in bad faith and maliciously.

## THE PARTIES

2. Westlake Legal is a law firm organized and existing under the laws of Virginia with its principal place of business located in Virginia.

3. MLM is a company organized under the laws of Minnesota with its principal place of business located in Minnesota. MLM is licensed to do business, and is transacting business, in the Commonwealth of Virginia.

## JURISDICTION & VENUE

4. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs, and Westlake Legal and MLM are citizens of different states.

5. Venue is properly placed under 28 U.S.C. § 1391, as this is a diversity action and a substantial part of the events giving rise to this complaint occurred in this district.

## BACKGROUND

<u>MLM Insures Westlake Legal</u>

6. Under malpractice insurance policies, MLM provided professional liability insurance coverage to Westlake Legal.

7. As relevant here, MLM issued a policy with a policy period of August 14, 2016 to August 14, 2017 (the "2016-17 policy") and a policy with a policy period of August 14, 2017 to August 14, 2018 (the "2017-18 policy").

8. Among other things, the insurance covered malpractice claims against Westlake Legal.

9. The 2016-17 policy contains the following innocent insured protection provision:

*INNOCENT INSURED PROTECTION*

*(1) WE will provide coverage for any INSURED who did not personally participate in or acquiesce to any actual or alleged dishonest, criminal, malicious or deliberately fraudulent act, error or omission of another INSURED; provided that the INSURED who did not participate in or acquiesce to the act, error or omission which gives rise to a CLAIM: (a) had no knowledge of or reason to believe that any such act, error or omission was being committed; (b) took appropriate action to prevent further wrongdoing immediately after learning of the act, error or omission; and (c) immediately notifies US after obtaining personal knowledge of such act, error or omission.*

*(2) If a CLAIM has been concealed from US by an INSURED who was responsible for such CLAIM and which, but for such concealment, would have been covered, WE will cover any INSURED who did not participate in, acquiesce to or fail to promptly notify US after having personal knowledge of such concealment.*

*To be covered under this Innocent Insured Protection provision the INSURED must promptly notify US of such acts or concealment and otherwise comply with all policy provisions. WE will have the right to recover against any INSURED responsible for any CLAIM EXPENSE or DAMAGES paid under this paragraph.*

<u>A Rogue Attorney At Westlake Legal Allegedly Commits Malpractice</u>

10. In 2014, Westlake Legal hired an attorney with seven years of experience in a public defender's office. Given that experience, he managed a docket for the firm, including motions practice, numerous jury and bench trials, and appeals. Until the current issue arose, the attorney's reputation was one of competence, integrity, and reliability.

11. That associate attorney at Westlake Legal began committing acts and omissions that resulted in malpractice claims against Westlake Legal and/or are likely to result in claims against Westlake Legal.

12. That attorney concealed those acts and omissions from Westlake Legal. The rogue attorney did so despite Westlake Legal's policies and procedures designed to uncover such acts and omissions, which included weekly attorney docket reviews, monthly attorney meetings to review the status of cases, and an electronic case management system that is capable of tracking the date of creation of documents and all modification to documents and attorney calendars.

13. On October 30, 2017, Westlake Legal discovered the attorney's previously concealed acts and omissions.

14. Westlake Legal then promptly notified MLM of the attorney's acts and omissions, including in writing in November 2017.

MLM Denies Coverage In Bad Faith

15. On November 27, 2017, MLM sent generic acknowledgment letters to Westlake Legal for the various claims involving the acts and omissions of the rogue attorney.

16. On January 5, 2018, MLM sent another letter to Westlake Legal stating that "if a defense of any claim becomes necessary that defense will be provided, under a full reservation of rights as set forth herein."

17. On January 8, 2018, Westlake Legal wrote to MLM and pointed out that under MLM's own policy language, a defense without reservation was required. MLM never responded to that letter.

18. On February 2, 2018, Westlake Legal wrote to MLM and again pointed out that under MLM's own policy language, a defense was required. In that letter, Westlake Legal

highlighted the efficiencies and advantages gained with Westlake Legal defending the claims and the fact that those efficiencies and advantages inured to the benefit of MLM. MLM never responded to that letter.

19. On February 6, 2018, MLM denied coverage for one particular claim. According to MLM, that claim was deemed made during the 2016-17 policy period and therefore Westlake Legal was required to report the claim to MLM by October 14, 2017 even though Westlake Legal did not know about the claim at that time. Because Westlake Legal did not report the claim until November 17, 2017 (according to MLM), MLM asserted that there was no coverage. The facts on which MLM denied coverage were known to MLM on January 5, 2018 when MLM agreed to provide a defense.

20. MLM's position ignored the plain language of the innocent insured protection provision in MLM's own 2016-17 policy. On February 7, in a phone conversation, Westlake Legal questioned whether MLM had even considered the innocent insured protection provision given that the provision plainly applied and prohibited MLM from denying coverage under the circumstances. MLM said it had and would provide its position in writing.

21. On February 13, 2018, MLM denied coverage for another claim. According to MLM, that claim was deemed made during the 2016-17 policy period and therefore Westlake Legal was required to report the claim to MLM by October 14, 2017 even though Westlake Legal did not know about the claim at that time. Because Westlake Legal did not report the claim until November 17, 2017 (according to MLM), MLM asserted that there was no coverage. MLM did not address the innocent insured protection provision in this letter. The facts on which MLM denied coverage were known to MLM on January 5, 2018 when MLM agreed to provide a defense.

22. After Westlake Legal followed up on the innocent insured protection provision multiple times, MLM finally sent a letter on February 23, 2018 purporting to address that issue. The entirety of MLM's position on the innocent insured protection provision in the 2016-17 policy was: "innocent insured provision did not operate to create coverage to which the exclusion [Exclusion 1] would be applicable."

23. Westlake Legal responded two business days later on February 27, 2018, showing that MLM's position was frivolous for multiple reasons.

24. As an initial matter, the provision was not even part of an exclusion, as MLM claimed. Moreover, both subsections 1 and 2 of the innocent insured protection provision applied.

25. With respect to the claim for which MLM denied coverage on February 6, subsection 1 of the innocent insured protection provision applies because Westlake Legal did not personally participate in or acquiesce to any of the rogue attorney's acts, errors, or omissions with respect to the client at issue. And, Westlake Legal had no knowledge of or reason to believe that any acts, errors, or omissions were being committed with respect to the client, took appropriate action to prevent further wrongdoing immediately after learning of those acts, errors, or omissions, and immediately notified MLM after obtaining personal knowledge of those acts, errors, or omissions. Thus, Westlake Legal meets the conditions of subsection 1. MLM never showed or claimed otherwise.

26. With respect for the claim for which MLM denied coverage on February 13, subsection 2 of the innocent insured protection provision applies. The rogue attorney was directed to report that claim to MLM in March 2017. However, the rogue attorney concealed the claim from MLM. But for that concealment, MLM would not have denied coverage based on an

alleged failure to report the claim during the 2016-17 policy period. And, Westlake Legal did not participate in, acquiesce to, or fail to promptly notify MLM after having personal knowledge of the rogue attorney's concealment. Thus, Westlake Legal meets the conditions of subsection 2. MLM never showed or claimed otherwise.

27. In short, if the claims are deemed made during the 2016-17 policy period, had to be reported during that policy period or extended reporting period, and were not, the innocent insured protection provision operates to do exactly what it says it does: protect Westlake Legal, the innocent insured in this matter.

28. Westlake Legal followed up on its February 27 letter, which contained the points above, multiple times.

29. On March 23, MLM told Westlake Legal that it was "preparing [a response] but . . . it may not be till early week after next," *i.e.*, the week of April 2.

30. Despite that and additional follow up correspondence by Westlake Legal, MLM never responded to Westlake Legal's February 27 letter showing why the innocent insured protection provision applied.

31. MLM's failure to respond is likely a result of its inability to justify its position.

32. Indeed, to date, MLM has not even attempted to justify its position nor can it.

33. MLM cannot justify its position because it is inconsistent with the plain language that MLM chose to include in the insurance policies issued to Westlake Legal.

34. Westlake Legal believes that MLM will deny coverage for many of the other claims related to the rogue attorney's acts and omissions for the same reasons that MLM denied coverage on February 6 and February 13 for the two particular claims.

35. MLM has also failed to provide a defense for any claim despite its January 5 letter telling Westlake Legal that MLM would provide a defense.

36. As a result of MLM's failure to provide a defense, Westlake Legal has defended the claims at its own cost. Westlake Legal has incurred, at a minimum, approximately $150,000 in fees and expenses in defending the claims that MLM has failed to defend.

## COUNT I (BREACH OF CONTRACT)

37. Westlake Legal repeats and realleges the allegations in the preceding paragraphs.

38. The applicable terms, conditions, and other requirements under the policies have been satisfied and, alternatively, compliance with the applicable terms, conditions, and other requirements, in whole or in part, has been waived or compliance is unnecessary for other reasons, including MLM's actions and inactions related to its handling of the claim.

39. Under the policies, MLM was obligated to provide coverage to Westlake Legal for claims related to the rogue attorney's acts and omissions, including to provide a defense for those claims.

40. MLM breached the policies by denying coverage.

41. Because of MLM's breach, Westlake Legal sustained loss and damages, including consequential damages. Those damages include, at a minimum, approximately $150,000 that Westlake Legal has incurred in defending the claims.

42. By reason of the foregoing, Westlake Legal demands judgment against MLM in an amount to be determined at trial and, in addition, demands pre-judgment and post-judgment interest and also seeks attorneys' fees and costs as well as other consequential damages resulting from MLM's breach.

## COUNT II (DECLARATORY JUDGMENT)

43. Westlake Legal repeats and realleges the allegations in the preceding paragraphs.

44. Westlake Legal will continue to defend the claims that are covered by the MLM policies.

45. MLM has breached its contractual obligations under the policies. Based on MLM's conduct to date, Westlake Legal expects MLM to continue to breach its obligations under the policies.

46. Based on MLM's improper actions and inactions to date, which Westlake Legal expects will continue, there is an actual and justiciable controversy between MLM and Westlake Legal regarding the parties' rights and obligations under the policies.

47. Therefore, Westlake Legal is entitled to a judgment of the parties' rights and obligations under the policies, including a declaration that MLM is obligated to provide coverage for the claims related to the rogue attorney's acts and omissions, including coverage for the defense of those claims.

## COUNT III (COMMON LAW AND STATUTORY BAD FAITH)

48. Westlake Legal repeats and realleges the allegations in the preceding paragraphs.

49. Under the policies, MLM owed Westlake Legal a duty of good faith.

50. MLM refused to respond to Westlake Legal's January 8, February 2, and, February 27 letters.

51. On January 5, MLM said it would provide a defense if a defense became necessary. On January 8 and February 2, Westlake Legal informed MLM that a defense was necessary under the policy language. MLM never responded to those communications or agreed to reimburse Westlake Legal for the amounts it incurred defending the claims.

52. In February 2018, MLM denied coverage for two particular claims based on facts MLM knew in January 2018 when MLM told Westlake Legal it would defend the claims.

53. MLM denied coverage for those claims based on its position that claims were made during the 2016-17 policy period and were not reported during that policy period despite the fact that the plain language of a prominent provision in the 2016-17 policy applied to protect the innocent insured in this case (Westlake Legal). After Westlake Legal raised that provision, MLM said it would provide its position in writing. It took MLM more than two weeks to provide a sixteen-word "position". Westlake Legal promptly responded in writing showing why the innocent insured protection provision plainly applied. MLM refused to respond to that letter and refused to even attempt to justify its coverage denial in light of the innocent insured protection provision.

54. MLM took the position that the innocent insured protection provision was part of an exclusion in the 2016-17 policy even though the innocent insured protection provision clearly is not part of an exclusion in the 2016-17 policy.

55. Based on the actions above, MLM breached that duty of good faith and acted in bad faith in handling Westlake Legal's claim and in refusing to provide coverage to Westlake Legal.

56. Based on the actions above, MLM's handling of Westlake Legal's claim and its refusal to provide coverage to Westlake Legal were wanton, oppressive, and evince a spirit of malice or criminal indifference to its obligations.

57. Westlake Legal is entitled to judgment against MLM for the breach of its good faith obligations and MLM is liable for all resulting damages, including attorneys' fees and interest, and punitive damages.

WHEREFORE, Westlake Legal requests that the Court enter judgment as follows:

1. In favor of Westlake Legal against MLM;

2. Determining and declaring that the malpractice policies cover the malpractice claims arising from the rogue attorney's acts or omissions;

3. Determining that MLM breached the policies by refusing to provide coverage;

4. Determining that MLM acted in bad faith; and

5. Awarding damages, including consequential and punitive damages, attorneys' fees, costs, interest and such other and further relief as the Court deems just and proper.

Dated: August 2, 2018 　　　　　　　　　　Respectfully submitted,

　/s/ Walter J. Andrews　
Walter J. Andrews, VA Bar. No. 46031
wandrews@huntonak.com
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 955-1802
Fax: (202) 862-3840

*Counsel for Westlake Legal Group, PLLC*